IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AIDEN FRANCIS NUNAN,<br><br>        Plaintiff,<br><br>v.<br><br>COUNTY OF CHESTER,<br><br>        Defendant. | CIVIL ACTION<br>NO. 17-5338 |

**OPINION**

**Slomsky, J.**                                                                                                                                                      **August 22, 2019**

**I.    INTRODUCTION**

On June 30, 2015, Defendant County of Chester (the "County") interviewed Plaintiff Aiden Francis Nunan for an open position for probation officer. At the time of the interview, Mr. Nunan was 55 years old. On July 15, 2015, the County informed Mr. Nunan that he had not been chosen for the position. Shortly thereafter, Mr. Nunan filed a series of Right-to-Know Requests with the County, attempting to discern who had been hired. Through those requests, Mr. Nunan learned that the County had hired two individuals for the position: Brian Hughes, who was 30 years old, and Nathan Reiser, who was 39 years old.

On November 28, 2017, Mr. Nunan filed this suit against the County, alleging that the County did not hire him because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. §§ 951, et seq. (Doc. No. 1.) One year later, on November 28, 2018, he filed the Amended Complaint. (Doc. No. 19.)

On April 25, 2019, the County filed the instant Motion for Summary Judgment. (Doc. No. 22.) On July 3, 2019, Mr. Nunan filed a Response in Opposition to the Motion for Summary

1

Judgment. (Doc. No. 23.) Finally, on July 24, 2019, the County filed a Reply in Further Support of its Motion. (Doc. No. 24.)

The County's Motion for Summary Judgment is now ripe for disposition. For reasons discussed infra, the Motion (Doc. No. 22) will be denied.

## II.     BACKGROUND

Plaintiff Aiden Francis Nunan currently lives at 1722 Simpson Avenue, Ocean City, New Jersey. (Doc. No. 22-1 at 15:19-24.) In 1984, he graduated from Muhlenberg College with a degree in business administration. (Id. at 18:8-11.) At some point after graduating, Mr. Nunan was hired as a probation officer in New Jersey, where he worked for twenty-five years. In 2014, he was named "Probation Officer of the Year" for the entire state of New Jersey. (Id. at 129.)

In April of 2015, when he was 55 years old, Mr. Nunan decided to take an early retirement from his job as a probation officer for "economic reasons." (Id. at 26:1-6.) That is, Mr. Nunan retired because "it was less beneficial for [him] to stay on the job economically than to leave the job and take [his] full benefits as an early retiree." (Id.) Still, he looked for other job opportunities. Shortly after retiring, Mr. Nunan came across an online job posting, which advertised a probation officer position in Chester County, Pennsylvania (the "County"). The job posting stated the following:

> Description
>
> The Adult Probation Department has seeks [sic] an Adult Probation Officer I who will be responsible for the supervision of adult offenders that have been granted parole or probation by the Court. The purpose of this supervision is to prevent the client from re-offending and enforce compliance with court-mandated sanctions.
>
> \*\*\*
> Qualifications/Requirements:
>
> Bachelor's Degree with major coursework emphasis in Administration of Justice/Criminal justice or one of the Social Sciences. Minimum of one year experience in the Criminal Justice field or related experience.

2

(Id. at 61.)  The job posting stated that applications should be submitted through the County's web portal by June 1, 2015.  (Id.)

Notwithstanding the posting's instructions, Mr. Nunan submitted his application on June 3, 2015 via fax.  (Id. at 19:17-20.)  Mr. Nunan testified that he tried to submit the application electronically, but that the application would not go through the web portal.  (Id. at 27:20-28:4.)  On his application, Mr. Nunan listed his address as 112 South High Street, West Chester, Pennsylvania.  (Id. at 34:11-15.)  He did not live at this address; rather, the property at 112 South High Street belonged to his cousin.  (Id. at 35:1-13.)

Based on Mr. Nunan's extensive experience as a probation officer in New Jersey, Christopher Pawlowski, a Section Director of the County's Adult Probation and Pretrial Services Department, called Mr. Nunan on June 29, 2015 to schedule an interview.  (Doc. No. 22 ¶ 13; Doc. No. 22-2 at 6:23-24.)  During the interview, Mr. Nunan told Mr. Pawlowski that he did not live in the County, but that he planned to move there in the event that he got the job.  (Doc. No. 22-2 at 22:1-12; Doc. No. 22-1 at 46:17-47:5.)  There is no residency requirement to work as a probation officer in the County.  (Doc. No. 22-2 at 23:5-6.)

On June 30, 2015, Mr. Nunan traveled to the Chester County Justice Center for his interview.  He was interviewed by a three-person panel, which included Mr. Pawlowski, Richard Marinari, and Sandra Larson.  (Doc. No. 22 ¶ 20.)  Like Mr. Pawlowski, Mr. Marinari and Ms. Larson are Section Directors of the County's Adult Probation and Pretrial Services Department. During their depositions, each panelist recalled that Mr. Nunan arrived for the interview looking disheveled and unprofessional.  They stated that Mr. Nunan was not wearing a suit and tie and that his shirt was wrinkled.  (Doc. No. 22-2 at 25:10-13; Doc. No. 22-3 at 10:10-12; Doc. No.

3

22-4 at 12:2-16.) Mr. Nunan disputes this testimony, and testified that he wore a suit and tie to the interview. (Doc. No. 23 ¶ 22.)

To interview Mr. Nunan, the panelists used a standard form entitled "Probation Officer Interview Questions." The form contains eighteen questions. After each question there is a space for the panelists to write comments or questions about the applicant's response. The form also instructs each panelist to score the applicant's response to each question on a scale from zero to two—a zero (0) denotes a poor response, a one (1) denotes an acceptable response, and a two (2) denotes a good response. (See Doc. No. 22-5.)

One of the questions on the standard form asks the applicant to answer the following question:

> 10. Issuing warrants for arrest of offenders is a part of this job. What factors/decisions would you see yourself considering in determining whether or not arrest is an appropriate course of action for a given offender?

(Id. at 3.) Under this question on Mr. Nunan's interview form, Mr. Pawlowski made the following notation: "Violated terms, never considered other factors, issue bench warrant they violated." (Doc. No. 22-6 at 3.) On her form, Ms. Larson wrote the following comment: "If they violated their terms and conditions, would not consider any other factors!!" (Doc. No. 22-5 at 3.) On his form, Mr. Marinari made the following note: "Violated terms and court order, wouldn't consider any other terms" and "not good??" (Doc. No. 22-7 at 3.) All three panelists gave Mr. Nunan a score of "0" on this question.[1]

In his deposition, Mr. Pawlowski testified that Mr. Nunan's response to Question 10 concerned him:

---

[1] The panelists notes were written during the interview, but the scores were written after the interview concluded. (See Doc. No. 22-3 at 13:3-11.)

> Answer: . . . There was one question that still jumps out in my mind that he answered when we asked him how – the decision to make violations and issue warrants and things like that, Mr. Nunan was very clear that it was you violate probation you go to jail and you issue a warrant.
>
> That is not what we do in Chester County. We are very, I guess I will say we are very open to working with people and helping them rehabilitate to keep them out of prison so their lives aren't disrupted from going to prison so we do everything we can at our disposal to work with people, and that was not what he had in mind as a provisional probation officer.

(Doc. No. 22-2 at 26:20-27:11.) In short, Mr. Pawlowski testified that Mr. Nunan's response to Question 10 did not align with the values and views of the Chester County Probation Office. Likewise, Ms. Larson testified that Mr. Nunan's response seemed "very punitive in nature" and that Mr. Nunan would allow "no wiggle room as far as helping a person rehabilitate." (Doc. No. 22-4 at 14:5-13.) According to Mr. Marinari, Mr. Nunan's response to Question 10 made him "very nervous." (Doc. No. 22-3 at 16:6-15.)

Mr. Pawlowski and Mr. Marinari also noted that they were concerned that Mr. Nunan did not understand the term "EBP," or an Evidence Based Practice, which, according to Mr. Pawlowski is a commonly used term and tool in the field of criminal justice. (Doc. No. 22-2 at 25:7-17; Doc. No. 22-3 at 13:17-20.) Mr. Pawlowski also stated that he was concerned about Mr. Nunan's response to Question 8, which asks the following:

> 8. You are driving through town and see one of your offenders sitting with some known gang members, smoking a joint and drinking a 40. What do you do?

(Doc. No. 22-6 at 2.) After the question, Mr. Pawlowski wrote the following: "Other Officer confront absolutely not let it go. Self, what is the policy on the safety??" (Id.) In his deposition, Mr. Pawlowski also stated the following:

5

Answer: . . . He without hesitation said he would confront it right away, he would absolutely not let it go. Then at that point he asked us what our policy was. But from an officer safety perspective that is not accepted if you see that to automatically respond to it because you have no idea what it is that person is involved with at the time.

So it just, to me it shows that there really was no other thought, it was a violation and he was going to confront it right away.

***

Question: How do you think that Chester County probation officers should respond to this scenario set forth in question 8?

Answer: If they see that happen they could return to the office and call that person and bring them into the office where it is a controlled environment, drug test them, speak to them, figure out what is going on, determine if they need treatment, drug and alcohol treatment, and find out what it is that lead [sic] them to do that that day.

(Doc. No. 22-2 at 38:18-39:21.)

According to Mr. Pawlowski, the panel did not ask Question 17, which asks an applicant to describe his long term career goals. (Id. at 40:24-41:2.) Mr. Marinari testified that Mr. Nunan did not mention his age during the interview (Doc. No. 22-3 at 18:12-14), which Ms. Larson confirmed. (Doc. No. 22-4 at 26:18-22.) Mr. Nunan disputes their testimony. On the subject of age, he testified as follows during his deposition:

Question: In the Complaint you filed, you claim that during the interview, you inadvertently mentioned your age in response to one of the questions. Can you describe the circumstances and the question that you were responding to?

Answer: I believe, but I'm not a hundred percent sure, that it was a question about like what are your – what are your future career plans. It was one of the – it was the last – one of the last few questions. An what I was saying was that I thought that I had retired too early and that I was quote, too young just to be hanging out and that I was 55 years old.

(Doc. No. 22-1 at 55:7-22.)

After the interview concluded and Mr. Nunan left the room, the three panelists discussed the interview and scored Mr. Nunan based on his performance. According to Mr. Pawlowski, scoring applicants is a collaborative process. (Doc. No. 22-2 at 41-42.) In addition to the scores for the eighteen questions, the standard form asks the panelists to score the applicant on the following topics: dress, poise, knowledge of probation/parole, verbal articulation, overall presentation, trainability, applicant punctuality, and second interview. Although all three panelists gave Mr. Nunan a "2" for knowledge of probation/parole and applicant punctuality, each panelist gave Mr. Nunan a "0" for dress, poise, trainability, and second interview. The panelists gave him a "1" for verbal articulation and overall presentation. Each panelist gave Mr. Nunan a total score of "24" out of 52 possible points. (See Doc. Nos. 22-5, 22-6, 22-7.) With respect to Mr. Nunan's poise, Mr. Marinari testified as follows:

> Question: Do you recall why you gave a zero to Mr. Nunan's poise?
>
> Answer: Kind of his demeanor. In my opinion it was kind of almost like a matter of fact that it was more or less a, what is the word I am looking for, a walk through for him and he was going to get hired immediately. He actually asked us where his desk would be and who his supervisor was. He didn't really elaborate on a lot of the questions and articulate them the way we thought he should or at least I thought somebody should.

(Doc. No. 22-3 at 17:7-19.) Ms. Larson testified that she thought that Mr. Nunan was "maybe arrogant" and "not engaging." (Doc. No. 22-4 at 21:21-24, 22:9-15.) Mr. Pawlowski testified that Mr. Nunan laughed in response to several questions. (Doc. No. 22-2 at 26:9-19, 32:17-33:6.)

The panelists were unanimous in their opinion that Mr. Nunan should not proceed to the second step of the hiring process and receive a second interview. (Id. at 48:13-16.) According to

7

the panelists, the reason Mr. Nunan was not hired was the insufficiency of his answers and his demeanor during the interview. (Id. at 48:21-22.)

In a letter dated July 15, 2015, Ms. Larson informed Mr. Nunan that he had not been selected for the position. (Doc. No. 22-1 at 61:4-9.) After receiving the letter, Mr. Nunan filed several Right-to-Know Requests[2] with the County, seeking information about who had been hired for the probation officer position. (Id. at 62:12-20.) Through those Requests, Mr. Nunan learned that the County had hired two new probation officers to fill its openings: (1) Brian Hughes, and (2) Nathan Reiser. (Doc. No. 22 ¶ 36.)

Brian Hughes was 30 years old when he applied for the probation officer position in 2015. (Id. ¶ 37.) He has a degree in English from Bloomsburg University. (Doc. No. 22-1 at 75.) Prior to applying to be a probation officer, Mr. Hughes worked for two years as a "DNA/Megan's Law/Reentry Coord[inator]" at the George W. Hill Correctional Facility in Thornton, Pennsylvania. (Id. at 76.) Before that, he worked for three years as a Case Manager at the George W. Hill Correctional Facility; in that capacity, he routinely worked with inmates, the courts, and probation officers. (Id. at 79.) Mr. Hughes was interviewed by Mr. Pawlowski, Mr. Marinari, and Ms. Larson on June 26, 2015. All three panelists gave him a total score of "29" out of a possible 52 points. (See id. at 103-111.)

Mr. Nunan believes that Mr. Hughes was not qualified for the position because the job posting sought applicants who had completed coursework in the social sciences; Mr. Hughes' degree is in English, which is a humanity. (Doc. No. 22-1 at 65:20:66-12.) In addition, he

---

[2] Pennsylvania's Right-to-Know Law requires that a record in the possession of a state or local agency be presumed to be a public record unless otherwise specified by the law. An individual can obtain public records by filing a Right-to-Know Request with the appropriate state or local agency. The name, title, and salary of a public official or employee are public records. See 65 P. S. § 67.101 et seq.

believes that he should have been hired over Mr. Hughes because he has more experience than Mr. Hughes in the criminal justice field. (Id. at 83:5-13.)

Nathan Reiser was 39 years old when he applied for the Chester County probation officer position in 2015. (Doc. No. 22 ¶ 40.) He has a degree in Political Science from Millersville University. (Doc. No. 22-1 at 82.) From 2011 to 2015, Mr. Reiser worked as a probation officer at the Dauphin County Work Release Center in Steelton, Pennsylvania. (Id. at 86.) In that capacity, he worked with residents of the Work Release Center to "ensure court ordered compliance." (Id.) Mr. Reiser was interviewed by Mr. Pawlowski, Mr. Marinari, and Ms. Larson on June 26, 2015. Two panelists awarded Mr. Reiser "29.5" points, and one panelist gave him "30.5" points. (See id. at 112-120.)

On December 3, 2015, Mr. Nunan dual-filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") and the United States Equal Employment Opportunity Commission ("EEOC"), claiming that the County discriminated against him because of his age. (Doc. No. 19 at 2.) On September 13, 2017, the EEOC dismissed the Charge of Discrimination and issued Mr. Nunan a Right to Sue Notice. (Doc. No. 22-1 at 92.) Shortly thereafter, on November 28, 2017, Plaintiff initiated the present suit in federal court. (Doc. No. 1.)

On November 28, 2018, Mr. Nunan filed the two-count Amended Complaint, alleging that Defendant County of Chester did not hire him because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. §§ 951, et seq. (Doc. No. 19.)

### III. STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this

decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 Fed. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata, 511 Fed App'x at 158. Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (alteration in original) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247–249. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party. Id. at 255. If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

## IV.  ANALYSIS

In its Motion for Summary Judgment, the County advances a single argument: that Mr. Nunan has not produced evidence from which a reasonable jury could conclude that the County failed to hire him because of his age.  For this reason, the County requests that the Court grant its Motion and enter judgment in its favor.  (Doc. No. 22.)  Conversely, Mr. Nunan contends that he has sufficiently discredited the County's proffered reason for not hiring him, such that a reasonable jury could conclude that the decision not to hire him was discrimination based on his age.  Consequently, Mr. Nunan argues that the Motion should be denied and that he should be afforded his day in court.  (Doc. No. 23.)

The Age Discrimination in Employment Act ("ADEA") provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To prevail on an age discrimination claim under the ADEA, or the analogous provision of the Pennsylvania Human Relations Act ("PHRA"), a plaintiff must demonstrate that age "was the 'but-for' cause of the employer's adverse decision."[3]  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 178 (2009). "In age discrimination, it is not sufficient to simply show that age was a 'motivating factor' in the adverse employment decision."  Terrell v. Main Line Health, Inc., 320 F. Supp. 3d 644, 656 (E.D. Pa. 2018) (citing Gross, 557 U.S. at 178).  Instead, the plaintiff needs to show that his age was the determinative factor—that is, the but-for factor—in the employment decision.  Id.  "Age discrimination may be established by direct or indirect evidence."  Duffy v. Paper Magic Grp.,

---

[3]  "The same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively."  Kautz v. Met-Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005).

Inc., 265 F.3d 163, 167 (3d Cir. 2001) (citing Connors v. Chrysler Fin. Corp., 160 F.3d 971, 972 (3d Cir. 1998)).

Where, as here, the plaintiff proffers only circumstantial evidence of age discrimination, a court applies the familiar burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Simpson v. Kay Jewelers, 142 F.3d 639, 643-44 (3d Cir. 1998); Terrell, 320 F. Supp. 3d at 656. Under McDonnell Douglas, the initial burden of establishing a prima facie case of age discrimination rests with the plaintiff. McDonnell Douglas, 411 U.S. at 802. If the plaintiff succeeds, the burden shifts to the defendant, who must then "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. Id. If the defendant articulates a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff who has the ultimate burden of showing by a preponderance of the evidence that the proffered reason was merely pretext. Id. at 804.

Here, the Court will address each step of the McDonnell Douglas burden-shifting paradigm in turn.

**A. Mr. Nunan Has Established a Prime Facie Case of Age Discrimination**

To establish a prima facie case of age discrimination, a plaintiff must show: (1) that he was forty years of age or older; (2) that the defendant took an adverse employment action against him; (3) that he was qualified for the position at issue; and (4) that he was replaced by an employee who was sufficiently younger to support an inference of discriminatory animus. Smith, 589 F.3d at 689-90 (citing Potence v. Hazelton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004)). Courts have held that the plaintiff's burden at this stage of the burden-shifting framework is "not onerous." Terrell, 320 F. Supp. 3d at 656 (quoting Simpson, 142 F.3d at 646).

Here, Mr. Nunan has established a prima facie case of age discrimination. At the time of the job interview, he was 55 years old and qualified for the probation officer position. As noted above, he worked as a probation officer in New Jersey for twenty-five years and has vast knowledge of the position. The County's failure to hire him was an adverse employment action, and the two employees hired instead of him were substantially younger than him. As noted above, Mr. Hughes was 30 years old when he interviewed for the position, and Mr. Reiser was 39 years old when he interviewed for the position.

Under McDonnell Douglas, because Mr. Nunan has established a prima facie case of age discrimination, the burden now shifts to the County to proffer a legitimate, nondiscriminatory reason for not hiring Mr. Nunan.

### B. The County of Chester Has Proffered a Legitimate, Nondiscriminatory Reason for Not Hiring Mr. Nunan

At the second step of the McDonnell Douglas framework, an employer defendant meets its burden by producing evidence which, taken as true, would allow a reasonable jury to conclude that there was a legitimate, nondiscriminatory reason for the adverse employment decision. Fuentes v. Perksie, 32 F.3d 759, 763 (3d Cir. 1994). Courts have explained that this is a "relatively light" burden. Terrell, 320 F. Supp. 3d at 657 (quoting Fuentes, 32 F.3d at 763). Significantly, at this step, "the employer need not prove that the proffered reason actually motivated the termination decision . . . ." Id. Instead, "throughout this burden-shifting paradigm[,] the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes, 32 F.3d at 763.

The County has satisfied its burden here. According to the County, it did not hire Mr. Nunan because he would not have been a good fit for the position based on his demeanor and his interview responses. The County also contends that it did not hire Mr. Nunan because he

13

falsified information on his application and because he submitted an inadequate resume. (Doc. No. 22 at 16.) In support of these proffered legitimate, nondiscriminatory reasons, the County cites to testimony from the panelists that Mr. Nunan was disheveled and unprofessional during the interview and that his interview responses revealed a punitive approach to probation that conflicted with the County's approach. Additionally, the County cites to the fact Mr. Nunan did not live at the address he listed on his application and claims that the resume he submitted with his application did not contain sufficient information about his past work and educational background.

Accordingly, the Court is persuaded that the County has produced legitimate, nondiscriminatory reasons for not hiring Mr. Nunan. Thus, under McDonnell Douglas, the burden now shifts back to Mr. Nunan, who, at this stage in the proceedings, must demonstrate a genuine issue of material fact from which a reasonable jury could conclude that the County's proffered reasons for not hiring him were pretext for age discrimination.

### C. Mr. Nunan has Identified Genuine Issues of Material Fact as to Whether the County's Reasons for Not Hiring Him were Pretextual

At the third and final step of the McDonnell Douglas burden-shifting paradigm, Mr. Nunan has the burden of establishing by a preponderance of the evidence that the County's proffered legitimate, nondiscriminatory reasons for failing to hire him were pretextual. See Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644-45 (3d Cir. 2015). The Third Circuit Court of Appeals has recognized two ways in which a plaintiff can show pretext:

> The first way to show pretext is for the plaintiff to point to evidence that would allow a factfinder to disbelieve the employer's reasons for the adverse employment action. [Fuentes, 32 F.3d] at 765. In order to raise sufficient disbelief, the evidence must indicate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons. Id. Alternatively, the second way a

plaintiff can establish pretext is to point to evidence that would allow a factfinder to believe that an invidious discriminatory was "more likely than not a motivating or determinative cause" of the employer's action. Id. at 764. Specifically, the plaintiff can show pretext this way by presenting evidence "with sufficient probative force" so as to allow the factfinder to "conclude by a preponderance of the evidence that age was a motivating or determinative factor." Simpson, 142 F.3d at 644-45 (citing Keller, 130 F.3d at 1111). Pointing to evidence demonstrating any of the following satisfies this second way to prove pretext: (1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably. Simpson, 142 F.3d at 645 (citing Fuentes, 32 F.3d at 765). If this step is satisfied, at trial the plaintiff must convince the factfinder that not only was the employer's proffered reason false, but the real reason was impermissible discrimination. Fuentes, 32 F.3d at 763 (quoting St. Mary's Honor Ctr., 509 U.S. at 515).

Willis, 808 F.3d at 644-45.

Here, Mr. Nunan only attempts to show pretext through the first method. That is, he submits that he has identified weaknesses and inconsistencies in the County's proffered reasons for failing to hire him from which a reasonable jury could conclude that the County's reasons are "unworthy of credence." (See Doc. No. 23.)

First, Mr. Nunan submits that there is a genuine issue of material fact as to whether the County failed to hire him because he "falsified his address on his application." In the Motion for Summary Judgment, the County claims that it did not hire Mr. Nunan because he did not live at the address he listed on his application. (See Doc. No. 22 at 16.) As noted above, when Mr. Nunan applied for the probation officer position, he lived at 1722 Simpson Avenue, Ocean City, New Jersey; but on his application, he listed his address as 112 South High Street, West Chester, Pennsylvania. The County claims that this "falsification" was one of the reasons it did not hire Mr. Nunan.

But as emphasized by Mr. Nunan, the evidence in the record undermines the County's proffered reason. To support its claim that it did not hire Mr. Nunan based on the falsification of

the address, the County cites to portions of the panelists' testimony where they discuss the reasons why Mr. Nunan was not hired. Significantly, the panelists only testified that Mr. Nunan was not hired because of his demeanor and his responses to the interview questions; not a single panelist stated or implied that the address issue had any effect on the decisionmaking process. Nor do any of the interview forms note that there was an issue with Mr. Nunan's address on his application.

Further, Mr. Nunan has identified inconsistencies in the County's conduct that raise a genuine issue of material fact as to whether it relied on the address issue when it decided to not hire him. As noted above, Mr. Nunan told Mr. Pawlowski that he did not live at the West Chester address during their phone call on June 29, 2015. Despite knowing this information, the County still interviewed Mr. Nunan the next day. Thus, the knowledge that he did not live at the West Chester address appears to have had little effect on the County's interest in Mr. Nunan for the probation officer position.

To provide a basis for disbelief, an employee must present "evidence contradicting the core facts put forward by the employer as the legitimate reason for its discretion." Cridland v. Kmart Corp., 929 F. Supp. 2d 377, 387 (E.D. Pa. 2013) (quoting McGrath v. Lumbermens Merch. Corp., 851 F. Supp. 2d 855, 861 (E.D. Pa. 2012)). Here, the inconsistencies identified by Mr. Nunan contradict the core facts produced by the County to support one of its articulated reasons for not hiring him. For this reason, the Court is persuaded that a reasonable jury could disbelieve the County's claim that it did not hire him as a result of the address issue.

Second, Mr. Nunan submits that there is a genuine issue of material fact as to whether the County failed to hire him based on his "inadequate resume." (See Doc. No. 23.) In the Motion for Summary Judgment, the County contends that when Mr. Nunan applied for the probation

officer position, he submitted a resume that contained insufficient information about his past work and his educational background. According to the County, that insufficiency contributed to the decision to not hire him. (Doc. No. 22 at 16.)

Mr. Nunan has identified inconsistencies in this articulated reason. Notably, none of the panelists testified that Mr. Nunan submitted an inadequate resume. Nor do any of the comments on the interview forms note any issues with his resume. Further, the County had the supposedly inadequate resume in its possession before it made the decision to interview Mr. Nunan. If the resume was indeed inadequate, it does not appear that that inadequacy lessened the County's interest in interviewing him for the probation officer position. Based on these inconsistencies, there is a genuine issue of material fact as to whether the County failed to hire Mr. Nunan because of issues with his resume.

Third, Mr. Nunan claims that there is a genuine issue of material fact as to whether the County failed to hire him based on what he wore to the interview. As noted above, the panelists testified that Mr. Nunan appeared disheveled and unprofessional at the interview. More specifically, the panelists each took issue with the fact that Mr. Nunan was not wearing a suit and tie. Mr. Nunan strongly disputes this testimony. In his deposition, he testified that he wore a suit to the interview. In addition, for the purposes of this litigation, he submitted a sworn declaration in which he affirms that he wore a suit and tie to the interview. (Doc. No. 23 at 13.)

This type of "'he said she said' dispute involves questions of credibility that this court cannot resolve at the summary judgment stage." Palamides v. Boehringer Ingelheim Pharm., Inc., No. 07-1696, 2011 WL 1044641, at *11 (W.D. Pa. Mar. 18, 2011); see also Barber v. CSX Distribution Servs., 68 F.3d 694, 700 (3d Cir. 1995) ("Evaluation of witness credibility is the exclusive function of the jury, and where the only evidence of intent is oral testimony, a jury

17

could always choose to discredit it."). Where there is a genuine dispute, the facts must be viewed in favor of the non-movant, which in this case is Mr. Nunan. Therefore, for the sole purpose of resolving this Motion, the Court is compelled to conclude that Mr. Nunan wore a suit and tie to his interview, thus casting doubt on the County's explanation that he was not hired because he was dressed unprofessionally.

Mr. Nunan also identifies several other inconsistencies between his testimony and the panelists' testimony. For example, Mr. Pawlowski testified that Mr. Nunan was impolite during the interview and that he laughed at several of the interview questions. Mr. Nunan, however, testified that he was not impolite and that he did not laugh. In addition, the panelists testified that they did not discuss Mr. Nunan's age during the interview and that they never asked him about his long term career goals. But according to Mr. Nunan, the panelists did in fact ask that question, and in response, Mr. Nunan inadvertently told them that he was 55 years old. Taken as true, these inconsistencies weaken the County's proffered reasons for not hiring Mr. Nunan.

In sum, the inconsistencies identified by Mr. Nunan, viewed in concert, are sufficient to indicate weaknesses in the County's proffered reasons for not hiring him, such that a reasonable jury could disbelieve those proffered reasons. As a result, Mr. Nunan has met his burden of establishing by a preponderance of the evidence that there are genuine issues of material facts as to whether the County's articulated reasons for not hiring him were pretextual. Accordingly, the County's Motion for Summary Judgment will be denied.

V. **CONCLUSION**

For the foregoing reasons, the County's Motion for Summary Judgment (Doc. No. 22) will be denied. An appropriate Order follows.